# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 13-569V
Filed: March 30, 2015
For Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| BRITTENY DEWS, by Her Mother and Next Friend, DAWN BROWN, | \* \* \* | |
| Petitioner, | \* \* | Attorneys' fees and costs decision; Respondent objects to fee award; |
| v. | \* \* | No reasonable basis; HPV vaccine; Cancer |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | \* \* \* | |
| Respondent. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>Elaine W. Sharp</u>, Marblehead, MA, for petitioner.
<u>Debra A. Filteau Begley</u>, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION DENYING ATTORNEYS' FEES AND COSTS[1]

On April 25, 2014, the undersigned issued a dismissal decision in this case, finding that petitioner failed to make a prima facie case that Gardasil vaccine caused her daughter's desmoplastic small round cell cancer and death. Petitioner filed an application for attorneys' fees and costs on July 18, 2014, requesting $10,395.01. Respondent filed her response opposing petitioner's application on August 7, 2014. After five motions for extension of time, petitioner filed her reply on March 17, 2015.

For the reasons set forth below, the undersigned finds there was no reasonable basis to bring the petition and denies petitioner's request for attorneys' fees and costs.

---

[1] Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioners have 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

## FACTS

On January 8, 2008, at the age of 19, Britteny received HPV vaccine. Med. recs. Ex. 9, at 1. On June 15, 2009, she had an abdominal CT after complaining of abdominal pain, diarrhea, and constipation. Med. recs. Ex. 4, at 12. The result was normal except for a follicular left ovarian cyst. Id.

On March 31, 2010, Britteny had a CT scan that revealed a large mass in her abdomen. Id. at 10–11. On May 19, 2010, she had a CT-guided biopsy which revealed that the mass in her abdomen was an invasive, malignant tumor with features of a desmoplastic small round cell tumor. Med. recs. Ex. 2, at 97. The tumor rapidly increased in mass and size. Id. at 43, 47. On December 2, 2010, a CT scan showed marked progression of Britteny's cancer. Med. recs. Ex. 1, at 24.

On August 12, 2011, Britteny died from metastatic desmoplastic small round cell abdominal cancer from which, according to the death certificate, she had suffered for 15 months. Med. recs. Ex. 8, at 1.

## PROCEDURAL HISTORY

Petitioner, Britteny's mother, first contacted her attorney, Ms. Elaine Sharp, on July 27, 2012. Ex. 11, at 1. Petitioner stated her daughter died from desmoplastic small cell cancer, and petitioner "believes a doctor put in writing that he believed the Gardasil vaccination was responsible." Id. Petitioner asserted that Britteny received her first two Gardasil vaccinations in August 2009 and October 2009. Id.

On November 24, 2012, Ms. Sharp emailed Dr. Leonard R. Worden a copy of Britteny's operative report and asked him to review the case. Id. at 2.

On November 24, 2012, Ms. Sharp's office obtained a HIPAA release and a list of Britteny's treating physicians from petitioner, and in January 2013, Ms. Sharp's office began requesting medical records. Id. at 2. Ms. Sharp reviewed the records in April and July 2013. Id. at 4. On August 1, 2013, Ms. Sharp's paralegal phoned petitioner to clarify Britteny's vaccination dates, as her vaccination records were missing from the medical records. Id. at 4. Petitioner returned the call on August 4, 2013, stating that although she did not recall the exact dates of vaccination, they were administered at SunCare Medical Center.[2] Id. at 5.

On August 12, 2013, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2006) ("Vaccine Act"), alleging that Britteny developed desmoplastic small cell cancer and subsequently died as a result of the Gardasil vaccinations she received on unknown dates in August and October 2009. Pet. at 1–2. The petition was filed

---

[2] Petitioner's reference to a SunCare Medical Center seems to be a mistake. Records were never obtained from SunCare, but they were obtained from SureCare Medical Center. Ms. Sharp had reviewed records from SureCare Medical Center on April 22, 2013, and noted that the vaccination record seemed to be missing. Ex. 11, at 4.

without proof of vaccination.

Petitioner filed eight exhibits of medical records in October 2013. During the initial telephonic status conference on November 13, 2013, the undersigned discussed four medical articles about desmoplastic small round cell tumors that identified their association with the EWS-WT1 gene. See Order, Nov. 13, 2013, ECF No. 9. None of these articles discuss vaccine association or causation. Petitioner's counsel said she intended to discuss with an expert whether any causal link could be established between Britteny's Gardasil vaccinations and her subsequent cancer and death.

On November 13, 2013, Ms. Sharp's paralegal called SureCare Medical Center in an effort to obtain the missing vaccinations records. Ex. 11, at 6. The receptionist at SureCare could not find the record in the electronic file but stated she would check the hard copy file. Id. Ms. Sharp's paralegal followed up with SureCare Medical Center again on February 3, 2014 (almost three months later), and was told there were no records pertaining to Gardasil vaccinations. Id. at 7. The billing records show that Ms. Sharp's office and/or petitioner made several subsequent attempts to obtain the vaccination records from SureCare, but were unsuccessful. Id. at 8–9.

In preparing for the telephonic status conference on February 3, 2014, Ms. Sharp read and annotated the four articles identified by the undersigned during the November 13 status conference. Id. at 8. There is no evidence in the billing records that Ms. Sharp conducted any medical or case research prior to reading these four articles. During the telephonic status conference, petitioner's counsel said she was having difficulty obtaining the vaccination records, and she had retained Dr. Leonard Worden to review the case.

After the status conference on February 3, 2014, Ms. Sharp had a phone conversation with Dr. Worden and sent him the petition and the medical articles identified by the undersigned. Id. at 8. Her office resent the articles on February 27, after Dr. Worden misplaced them. Id. at 9. Ms. Sharp billed 1 hour and 12 minutes on March 3, 2014, to review the articles referenced by the undersigned and to review Dr. Worden's commentary on the articles. Id.

During a telephonic status conference on March 14, 2014, petitioner's counsel said she had received a report from Dr. Worden on March 3, 2014, but had not yet had an opportunity to read it thoroughly. Later that day, petitioner filed a billing record from SureCare Medical Center showing Britteny received HPV vaccine on January 8, 2008. Med. recs. Ex. 9, at 1. Petitioner's counsel noted in the Notice of Filing that petitioner still contends Britteny received subsequent Gardasil vaccinations in August 2009 and October 2009.

On April 25, 2014, several filings and events occurred. Respondent filed her Rule 4(c) Report, stating that petitioner did not offer any proof from either Britteny's treating physicians or an expert medical doctor that HPV vaccine caused Britteny's cancer, thus failing to make a prima facie case.

Petitioner filed Petitioner's Motion for Judgment on the Record, in which she stated that she "understands the difficulties in pursuing this case further and assents to the relief sought in

3

th[e] motion." Pet'r's Mot. at 1.  The undersigned held a telephonic status conference with counsel, and petitioner's counsel stated petitioner consented to dismissal of the case.

Later that day, petitioner filed an expert report from Dr. Worden.  Dr. Worden did not opine that the vaccine caused petitioner's illness. Ex. 10, at 2.  Rather, he wrote he would "hold" his opinion on that point.  Id.  He wrote that while the HPV virus is believed to cause various types of cancer, "[t]he vaccine supposedly cannot function as a live virus" and "is supposed to be completely free of HPV viral DNA nucleus particles." Id.  He thought that causation could be possible if there were any live virus or viral DNA in the specific batch of vaccine, but stated that "without further investigation through the discovery process in a court of law – we have no way to establish that Brittany's [sic] cancer was caused by Gardasil." Id.

The undersigned issued a dismissal decision, finding that petitioner failed to prove the Gardasil vaccine caused Britteny's illness and death.  On April 26, 2014, petitioner filed a Motion to Correct, requesting that the undersigned remove from the decision a quotation from Dr. Worden's report, in which he stated, "without analyzing the specific vial of HPV vaccine Britteny received in 2008 and testing tissue samples from her tumors to look for live viruses or viral DNA in either the vaccine vial or tumors, there would not be a good faith basis to proceed."  The undersigned denied petitioner's motion.  Judgment entered on May 30, 2014, dismissing the petition.

Petitioner filed a motion for attorneys' fees and costs on July 18, 2014, requesting $10,395.01.  On August 7, 2014, respondent filed a Response to Petitioners' Application for Attorneys' Fees and Costs, asserting that the petition was not supported by a reasonable basis and objecting to an award of attorneys' fees and costs.

Petitioner filed five motions for extension of time to file a reply to respondent's objection.  On March 17, 2015, petitioner filed Petitioner's Reply Brief in Support of Application for Reasonable Attorneys' Fees and Costs.  Petitioner argues that the petition was supported by a reasonable basis in light of the looming statute of limitations and petitioner's assertion that a treating doctor said the vaccine caused Britteny's cancer.  Petitioner asserts that in order to prove causation, she would need to "obtain aliquots of the subject vaccines to determine if PCF DNA testing would identify the presence of live HPV virus in the Gardasil vaccines with which [Britteny] was inoculated." Pet'r's Reply at 4.  Petitioner's counsel argues that, based on her prior experience, this discovery is unavailable in the Vaccine Program.

Respondent elected not to file a sur-response.  This matter is now ripe for adjudication.

## DISCUSSION

I.  **Entitlement to Fees and Costs Under the Vaccine Act**

A. **Applicable Legal Standards**

When a petitioner is successful in proving her vaccine claim and is awarded compensation, a special master must also award reasonable attorneys' fees and costs.  However,

4

"[s]pecial masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition." Silva v. Sec'y of HHS, 108 Fed. Cl. 401, 405 (Fed. Cl. 2012). When a petitioner fails to prove entitlement, the statute directs that a special master or a judge on the Court of Federal Claims "*may* award an amount of compensation" for reasonable attorneys' fees and costs "*if* the special master . . . determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1)(B) (emphasis added); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioners are "entitled to a presumption of good faith." Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Program rules, and neither the Federal Circuit nor the Court of Federal Claims has defined "reasonable basis" for purposes of fee awards under the Vaccine Act. Chuisano v. United States, 116 Fed. Cl. 276, 285 (Fed. Cl. 2014). As the Court of Federal Claims stated, "A 'reasonable basis' standard that is not rigidly defined—as amorphous as it may be—is consistent with the Vaccine Act as a whole." Id. at 285. However, many special masters and Court of Federal Claims judges have determined "reasonable basis" to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011); Chuisano, 116 Fed. Cl. at 285. It is "something less than a preponderance of the evidence." Chuisano, 116 Fed. Cl. at 289.

In determining reasonable basis, the Court looks "'not at the likelihood of success [of a claim] but more to the feasibility of the claim.'" Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9. An attorney's pre-filing investigation into the feasibility of the claim is also a relevant factor in analyzing whether a petition had a reasonable basis. Cortez v. Sec'y of HHS, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). The Act requires an affidavit and supporting documentation to be filed with the petition, 42 U.S.C. § 300aa-11(c)(1)(A), and thus basic inquiries are required prior to filing a petition.

On the one hand, special masters traditionally have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis."). Special masters have found reasonable basis to file a claim absent medical records or opinions supporting vaccine causation. See Austin, 2013 WL 659574, at *8; Hamrick, 2007 WL 4793152. Yet, on the other hand, the statutory requirements of both good faith and a reasonable basis necessarily entail that some fee denials will occur. "If Congress had intended all or nearly all petitioners to recover fees, it easily could have expanded fee awards to

5

all petitions filed in good faith, rather than requiring good faith and a reasonable basis." Chuisano, 116 Fed. Cl. at 286.

Claims filed near the expiration of the statute of limitations have traditionally received the most lenient treatment when analyzing reasonable basis. See Austin, 2013 WL 659574, at *9. ("[S]pecial masters have recognized that the ability to investigate adequately a claim is constrained by the need to file quickly to preserve the claim, and have found the balance between these competing obligations favors filing."). Id. However, this leniency is logical only when a petitioner approaches an attorney shortly before the statute of limitations expires. In contrast, when an attorney fails to properly investigate a claim before filing the petition, despite adequate time to do so, the petition may lack a reasonable basis. Chuisano, 116 Fed. Cl. at 286, 291 ("The court will not encourage delays in the filing of petitions, or delay in the exercise of other due diligence, by sanctioning a bright-line rule that finds the existence of a reasonable basis for every claim filed on the eve of the limitations period.") An overly lenient approach to the reasonable basis requirement encourages attorneys to "game the system"—to delay investigation until after filing a non-meritorious petition so that they may receive fees for the investigation. See Lamar v. Sec'y of HHS, 2008 WL 3845165, at *4 n.13 (Fed. Cl. Spec. Mstr. July 30, 2008); Everett v. Sec'y of HHS, 1992 WL 35863, at *2 (Fed. Cl. Spec. Mstr. Feb. 7, 1992).

Special masters and the Court of Federal Claims have found petitions lacked reasonable basis when counsel failed to properly investigate prior to filing the petition. For example, in Silva v. Secretary of Health and Human Services, 108 Fed. Cl. at 405, Judge Hodges affirmed Special Master Moran's finding that the petition lacked a reasonable basis at the time it was filed. In that case, the petitioner approached counsel 17 months before the petition was filed. Silva, 2012 WL 2890452, *6 (Fed. Cl. Spec. Mstr. June 22, 2012). Special Master Moran concluded that had the attorneys (instead of paralegals) spent time analyzing the medical records prior to filing, they likely would have concluded the case was lacking. 108 Fed. Cl at 403–04. In reaching this conclusion, Special Master Moran emphasized that although petitioner alleged she suffered from transverse myelitis ("TM"), her MRIs were normal, and none of her treating doctors stated that the vaccine caused her to suffer TM. Id. at 403. Judge Hodges noted that the statute contemplates that attorneys must complete a pre-filing review of the available medical records to establish that the claim is feasible. Id. at 405.

Similarly, in Chuisano v. Secretary of Health and Human Services, Special Master Moran found the petition lacked a reasonable basis and denied an award of attorneys' fees and costs, 2013 WL 6234660 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), and Chief Judge Campbell-Smith affirmed on appeal. 116 Fed. Cl. 276. In that case, petitioner first contacted her initial counsel two years before the petition was filed. Id. at 291. The special master found that petitioner presented "no evidence supporting a causal connection" between the flu vaccination and the petitioner's death. 2013 WL 6234660, at *18. All of the medical records attributed the petitioner's injuries and death to non-vaccine-related causes, and counsel did not review medical or legal literature concerning vaccine causation until after the petition was filed. 116 Fed. Cl. at 290.

In Cortez v. Secretary of Health and Human Services, 2014 WL 1604002, Special Master Corcoran also concluded the petition lacked a reasonable basis at filing and denied an award of attorneys' fees and costs. In that case, it was eventually proven, after deposing the doctor who

6

allegedly administered the flu vaccination, that petitioner never received the alleged flu vaccination. Id. at *4. Special Master Corcoran found that petitioner's counsel had "ample opportunity" to discover petitioner never received the vaccination during the two years he represented petitioner prior to filing the petition. Id. at *8. See also Kegler v. Sec'y of HHS, No. 13-544V, 2014 WL 1568837 (Fed. Cl. Spec. Mstr. March 28, 2014); Amin v. Sec'y of HHS, No. 13-300V, 2013 WL 5994685 (Fed. Cl. Spec. Mstr. Oct. 16, 2013); Browning v. Sec'y of HHS, No. 07-453V, 2010 WL 4359237 (Fed. Cl. Spec. Mstr. Nov. 1, 2010); Di Roma v. Sec'y of HHS, No. 90-3277, 1993 WL 496981 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).

### B. Analysis

Petitioners are entitled to a presumption of good faith, and respondent does not contest petitioner's good faith. There is no evidence that this petition was brought in bad faith; therefore, the undersigned finds that the good faith requirement is present.

In contrast, respondent does contest that this petition was supported by a reasonable basis. Respondent points to the absence of any opinion from Britteny's treating doctors that her condition was caused by the HPV vaccination, the lack of a supporting expert report, and the dearth of any medical articles or other evidence that the HPV vaccine is "even capable of causing DSRC cancer." Resp't's Opp. at 13–14. Particularly given the fact that petitioner ultimately submitted an expert report from Dr. Worden stating he could not support causation, respondent contends that petitioner's counsel should have reasonably investigated the claim before filing and learned there was insufficient evidence to support the claim. Id. at 14.

In reply, petitioner argues that the "limitations of the [Vaccine Program] forum" hindered her ability to establish causation, and without such limitations, her claim would be supported by a reasonable basis. Pet'r's Reply at 4. This argument has no merit.

First, petitioner cannot claim that she lacked the opportunity for discovery when she never moved for or otherwise requested such discovery. The Vaccine Act directs that "[t]here may be no discovery on a petition other than the discovery required by the special master." 42 U.S.C. § 300aa-12(d)(3)(B). Similarly, Vaccine Rule 7(a) states, "There is no discovery as a matter of right. The informal and cooperative exchange of information is the ordinary and preferred practice." However, Vaccine Rule 7(b)(1) permits a party to move to obtain discovery either orally or by filing a motion. Petitioner's counsel cites her prior experience in other cases as proof that the Vaccine Program doesn't allow discovery. See Pet'r's Mot. Correct Dec. 2, Apr. 26, 2014, ECF No. 19 (citing Maleszyk v. Sec'y of HHS, No. 05-1009[3]). However, other

---

[3] In Maleszyk, the petitioners alleged that OPV vaccine caused their daughter's cancer and death. Special Master Golkiewicz and later Special Master Campbell-Smith presided over the case. Petitioners proposed a theory that the vaccine was contaminated with simian virus and caused the vaccinee's cancer. Maleszyk, No. 05-1009V, Status Rep., Sept. 25, 2007, ECF No. 26. Petitioners were permitted to test the vaccinee's DNA for simian virus. This PCR DNA testing was negative for any simian virus, although petitioners presented expert testimony that a negative result did not necessarily preclude causation by simian virus. Subsequent motions for production of the vaccine to see if it contained viral particles were denied. Order, July 7, 2008, ECF No. 43; Order, Oct. 12, 2011, ECF No. 100. Petitioners filed a motion

7

Vaccine cases are not binding on the undersigned. Hanlon v. Sec'y of HHS, 40 Fed. Cl. 625, 630 (Fed. Cl. 1998), aff'd, 191 F.3d 1344 (Fed. Cir. 1999). The fact that petitioner's counsel's discovery request was denied in another case before another special master has little relevance in this case, as it is not at all predictive of what the undersigned would have ruled in this case.

Second, the "reasonable basis" standard is written into the Vaccine Act and is unique to the Vaccine Program. The standard thus encompasses any limitations inherent to the Vaccine Program. Therefore, any discovery limitation in the Program (which petitioner has not proven to exist) cannot logically be used to defend a lack of reasonable basis. The standard cannot be whether a claim would have a reasonable basis if it were brought in another court—it must be whether the claim is feasible in the Vaccine Program, which necessarily entails any statutory limitations, such as discovery limitations.

In this case, petitioner approached counsel more than a year before the petition was filed. Within that time period, petitioner's counsel obtained and reviewed Britteny's medical records. However, in the year before filing the petition, petitioner's counsel did not obtain proof of vaccination or conduct any medical or case research to determine whether a claim alleging HPV vaccine caused cancer is "feasible."

Petitioner asserts that one of Britteny's doctors said the HPV vaccination caused her cancer, but she could not remember which doctor said this. Petitioner's counsel states that this unfounded assertion by petitioner provides a reasonable basis for the petition. Special Master Moran addressed a similar assertion in Chuisano, 2013 WL 6234660, aff'd 116 Fed. Cl. 276. In that case, petitioner's counsel argued the petition was supported by a reasonable basis because an expert (in an undocumented discussion) told counsel he would issue a causation opinion. Special Master Moran stated that merely asserting a doctor opined in favor of causation cannot be enough to satisfy reasonable basis. 2013 WL 6234660, at *23 (citing Perreira v. Sec'y of HHS, 33 F.3d 1375 (Fed. Cir. 1994)). If it were, any attorney or petitioner could establish reasonable basis by asserting some doctor said the vaccine caused petitioner's injury. If a treating doctor had actually opined that Britteny's cancer was caused by the HPV vaccine, such an opinion might establish a reasonable basis for filing the petition. That is not the case here. Petitioner's counsel had the medical records in her possession at the time of filing, and a thorough pre-filing review would have revealed that no treating doctor had opined or even suggested that Britteny's HPV vaccine caused her cancer. Petitioner also asserted that Britteny received vaccinations in August 2009 and October 2009 from SureCare, but the records obtained from SureCare (prior to filing the petition) did not show these vaccinations. Finding that the records did not support petitioner's allegations regarding both the vaccination dates and the treating doctor's statement should have been a "red flag" for petitioner's counsel.

Furthermore, while petitioner's counsel contacted Dr. Worden for his opinion on the case's plausibility in November 2012, almost nine months before filing the petition, the billing records indicate that she did not communicate with him again until February 2014, more than a

---

for judgment, and the case was dismissed for insufficient proof on August 21, 2012. Decision, Aug. 21, 2012, ECF No. 117.

year later.  If counsel had contacted and followed up with Dr. Worden more promptly, she could have learned petitioner did not have a feasible claim prior to filing the petition.

While an appropriate pre-filing investigation does impose some financial burden on counsel, the requirement that a petition be supported by a reasonable basis necessarily entails such a burden.  "Petitioners are not given a blank check to incur expenses without regard to the merits of their claim."  Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375; see also Everett, 1992 WL 35863, at *2 (in which the special master refused to award costs incurred in connection with a petition "which should never have been filed.")  Reasonable basis is an *objective* standard.  To allow attorneys to delay investigating the feasibility of a claim until after filing the petition essentially converts the Vaccine Act to require only good faith.  A proper pre-filing investigation would have revealed the absence of any medical or legal support for petitioner's claim.  Petitioner's counsel had more than a year to investigate this case prior to filing the petition, and as an experienced attorney in the Vaccine Program, she should have realized this petition was not supported by a reasonable basis.

## CONCLUSION

The undersigned finds that there was no reasonable basis to bring this petition. Petitioner's request for attorneys' fees and costs is **DENIED.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]


**IT IS SO ORDERED.**


Dated: March 30, 2015                                         /s/ Laura D. Millman
                                                               Laura D. Millman
                                                               Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.